## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DOUGLAS G. BEZIO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 2:12-CV-00396-NT |
| | ) |
| SCOT E. DRAEGER et al., | ) |
| | ) |
| Defendants. | ) |

### ORDER ON DEFENDANTS' MOTION TO DISMISS
### AND COMPEL ARBITRATION

Defendants Scot E. Draeger, John M.R. Patterson, Caleb C.B. DuBois, and Bernstein, Shur, Sawyer and Nelson, P.A. (collectively, **BSSN**) move pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2012) (**FAA**) to dismiss and compel arbitration of Plaintiff Douglas G. Bezio's two-count complaint for malpractice and violation of Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 213 (ECF No. 8). Following initial briefing, the Court on June 18, 2013, requested that the parties provide their positions on whether the Court should certify to Maine's Supreme Judicial Court the question of whether attorney representation agreements may contain arbitration clauses. For the reasons that follow, the Court does not certify the question and the Defendants' motion to dismiss this case and compel arbitration is **GRANTED**.

I.  **Background**

From March of 2011 through December of 2011, BSSN represented Bezio with respect to a matter brought against him by the State of Maine Office of Securities involving an alleged violation of Maine state securities laws. On

1

September 26, 2011, Bezio signed a consent order in which he agreed not to contest the State's conclusion that he, *inter alia*, "engaged in unlawful, dishonest or unethical practices in the securities, commodities, investment, franchise, banking, finance or insurance business" under 32 M.R.S.A. §§ 16412(2)(3) and (4)(M). *Douglas G. Bezio*, No. 10-062 (Me. Office of Sec., September 30, 2011). Immediately following publication of the consent order, Bezio was fired from his job with a securities firm in Massachusetts.

Bezio alleges that BSSN both failed to involve his employer in the process of negotiating the consent order and led him to believe that the order would have no impact outside of Maine. He alleges that as a result of BSSN's malpractice he lost his livelihood, or at the very least, lost the value he could have obtained from transferring his book of business in an orderly manner prior to entry of the consent order.

When Bezio first hired BSSN, BSSN sent Bezio a three-page letter of engagement dated March 18, 2011, outlining the terms of the firm's representation and incorporating by reference an attached four-page document entitled "Standard Terms of Engagement." Bezio executed the letter, and he initialed every page of both the letter and attached Standard Terms. The final section in the Standard Terms is entitled "**Arbitration**." It states in pertinent part:

> If you disagree with the amount of our fee, please take up the question with your principal attorney contact or with the firm's managing partner. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. In the event of a fee dispute that is not readily resolved, you shall have the right to submit the fee dispute to arbitration under the Maine Code of Professional

> Responsibility. Any fee dispute that you do not submit to arbitration under the Maine Code of Professional Responsibility, and any other dispute that arises out of or relates to this agreement or the services provided by the law firm shall also, at the election of either party, be subject to binding arbitration.

Scott Draeger Decl. Ex. B 6-7 (ECF No. 8-3) (the "**Arbitration Clause**").

BSSN contends that the Arbitration Clause requires the Court to dismiss this case and compel arbitration of Bezio's claims under the FAA. Bezio opposes dismissal of this case and opposes arbitration except insofar as it involves BSSN's claim against him for unpaid legal fees. Relying on a recent opinion from Louisiana's Supreme Court, Bezio argues that the Arbitration Clause is unenforceable because BSSN failed to obtain his informed consent to this clause. *See Hodges v. Reasonover*, 103 So. 3d 1069, 1077 (La. 2012). BSSN does not dispute that it did not review this clause with Bezio before he signed the agreement. It does argue, however, that the FAA requires the Court to enforce the clause.

**II. Discussion**

    **A. Motion to Compel Arbitration**

Federal courts will grant a motion to compel arbitration pursuant to the FAA when "'(i) there exists a written agreement to arbitrate, (ii) the dispute in question falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro-Elec. Co. v. New Engl. Tel. & Tel. Co.,* 62 F. Supp. 2d 152, 155 (D. Me. 1999)).[1]

---

[1] The parties do not dispute that, since the Court already has jurisdiction over this case, the FAA applies to the construction and interpretation of their agreement. *See Hall St. Associates, L.L.C.*

### 1. Existence of a Written Provision to Arbitrate

Section 2 of the FAA provides that a written provision to arbitrate "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added). "When deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 42 (1st Cir. 2012) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alteration in original)).[2]

> Under Section 2 of the FAA:
>
> state law may be applied '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (citations omitted) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). *Casarotto* made clear that the FAA places arbitration clauses on equal footing with any other clause in a contract. In *Casarotto*, the Supreme Court rejected a Montana statute that

---

*v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (noting that the FAA requires an independent basis for federal jurisdiction, but "in cases falling within a court's jurisdiction, the Act makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce.'" (citing FAA § 2)).

[2]    "'[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.'" *Awuah*, 703 F.3d at 41 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Parties may delegate questions of arbitrability to the arbitrator, *see Awuah*, 703 F.3d at 41, but BSSN makes no claim that the Arbitration Clause delegates questions of arbitrability to the arbitrator.

required arbitration clauses to be placed in underlined capital letters on the first page of any contract. This statute, the court said, violated the FAA's requirement that arbitration clauses not be singled out for suspect status.[3]

The *Casarotto* court instructed that the FAA's goals and policies are considered "antithetical to threshold limitations placed specifically and solely on arbitration provisions." *Casarotto,* 517 U.S. at 688. The *Casarotto* court also reminded that when it comes to holding arbitration clauses unconscionable, courts cannot "effect what . . . the state legislature cannot." *Casarotto,* 517 U.S. at 689 n.3 (quoting *Perry,* 482 U.S. at 492 n.9).

---

[3]     In their initial briefs, the parties asserted contradictory positions on whether federal or state law controls. Bezio, citing *Combined Energies*, 514 F.3d at 171, and *First Options v. Kaplan*, 514 U.S. at 944, correctly noted the general principle that state contract law applies to questions regarding whether the parties agreed to arbitrate a certain matter. BSSN did not distinguish those cases, so the Court turned to Maine law. Although there is no Law Court opinion on point, the Maine Professional Ethics Commission issued an advisory opinion holding that arbitration clauses in attorney engagement agreements are valid. *See* Me Prof. Ethics Comm'n, Op. No. 170 (Dec. 23, 1999).

The subject of arbitration clauses in attorney engagement agreements turns out to be a hotly debated issue. *Compare Hodges*, 103 So.3d at 1077 (requiring informed consent), ABA Formal Ethics Op. No. 02-425 (Feb. 20, 2002) (same); Vt. Ethics Op. No. 2003-7 (same), Ok. Adv. Op. No. 312, 2000 WL 33389634, at *6 (Okl. Bar Ass. Leg. Eth. Comm., August 18, 2000) (same), Va. Legal Eth. Op. No. 1707 (Jan. 12, 1998) (same), NYCLA Eth. Op. No. 723, 1997 WL 419331 at *3 (N.Y. Cty. Law. Assn. Comm. Prof. Eth., July 17, 1997) (same), *with* Oh. Prof'l Responsibility Op. No. 96-9 (Dec. 6, 1996) (arbitration clauses prohibited in attorney engagement agreements), and D.C. Ethics Op. 211 (May 15, 1990) (same) (overruled in 2007 by a change in D.C. Rule 1.8(g)(2)), *and compare with DeMartini v. Johns*, No. 3:12-cv-03929-JCS, 2012 WL 4808448 (N.D. Ca., Oct. 9, 2012) (arbitration clauses in attorney engagement valid without informed consent), *Andrew Grossman Venerable Gp., L.P. v. McAfee & Taft*, No. Civ.-10-853-M, 2011 WL 463035 (W.D. Okl., Feb. 4, 2011) (same, but not mentioning the Oklahoma Bar Association Legal Ethics Committee's advisory opinion), *Tolliver v. True*, Civ. A. No. 06-cv-02574-WDM-BNB, 2007 WL 2909393 (D. Co., Sept. 28, 2007) (same), *Watts v. Polaczyk*, 619 N.W.2d 714, 607-08 (Mich. App. 2000) (same).

Reluctant to enter this debate, the Court sought briefing on whether to certify the question to the Maine Law Court. Additional research convinced the Court that state laws that target arbitration provisions are displaced by the FAA. So regardless of the merits of the varying viewpoints of state courts and ethics commissions, this Court, in this FAA-governed case, must follow the FAA.

Bezio seeks a ruling that under Maine law, BSSN was required to obtain informed consent to the Arbitration Clause. If the Court did find the Arbitration Clause unenforceable on this ground, it would be establishing a requirement applicable only to arbitration clauses. Such a holding would be futile, because the FAA displaces state law to the extent it "singl[es] out arbitration provisions for suspect status." *See Casarotto*, 517 U.S. at 687. Because Bezio points to no "generally applicable contract defenses" to support revocation of the contract, the Arbitration Clause survives.

### 2. Scope

Under the FAA, "'[t]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *MSAD No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 55 (D. Me. 2002) (quoting *Smith/Enron Cogeneration Ltd. P'ship. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 99 (2d Cir. 1999)). An arbitration clause like the one at issue here, which defines its scope to include "any . . . dispute that arises out of or relates to this agreement or the services provided by the law firm" is "facially broad in scope." *See Winterwood Farm, LLC v. JER, Inc.,* 327 F. Supp. 2d 34, 39 (D. Me. 2004).

Bezio asserts that the Arbitration Clause does not specifically mention arbitration of malpractice claims, and therefore it does not reasonably encompass such claims. It is fair to say that BSSN buries the lead by commencing the

Arbitration Clause with a discussion of fee disputes. But Bezio does not claim that the phrase "any other dispute that arises out of or relates to this agreement or the services provided by the law firm" is unclear. Under FAA principles, the Court must broadly construe this provision, and it is certainly susceptible to an interpretation that covers the asserted dispute.

### 3. Waiver

In its supplemental briefing, BSSN agreed to waive its claim to compel arbitration should the Court certify the question of the validity of its arbitration clause to the Law Court. Since the Court has not certified the question, BSSN's conditional waiver is inapplicable. Bezio makes no independent claim that BSSN has waived its right to arbitration.

### B. Motion to Dismiss

BSSN has requested dismissal of the suit, and, since both counts of the Complaint are subject to arbitration, the Court has discretion to grant this request. *See Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998). The Court sees no compelling reason to retain this case on its docket, and therefore dismisses the case.

### III. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss and compel arbitration is **GRANTED.**

**SO ORDERED**.

/s/ Nancy Torresen
United States District Judge

Dated this 16th day of July, 2013.